In the Matter of the Application of LUCY K. JENKINS and FRANK E. KATHAN to Set Aside Waivers and Open the Decree Admitting the Will to Probate in the Estate of ROLAND V. KATHAN, Deceased.

LUCY K. JENKINS and FRANK E. KATHAN, Appellants; NORMAN D. KATHAN and Others, Respondents.

Third Department, November 12, 1941.

*Charles T. Lark*, for Lucy K. Jenkins; *Arthur H. Vinett*, for Frank E. Kathan [*John B. Doyle* and *Arthur H. Vinett* of counsel], for the appellants.

*Jasper S. Levine* [*Ellis J. Staley* of counsel], for the respondents.

HILL, P. J.   This is an appeal from an order of the Schenectady County Surrogate's Court denying petitioners' application to vacate an order and decree of that court which probated the last will and testament of Roland V. Kathan, deceased, and to open the proceeding for probate and set aside waivers signed by them.

Roland V. Kathan died April 5, 1939, at Ellis Hospital in the city of Schenectady.   He was survived by the petitioners, an uncle, Frank E. Kathan, an aunt, Lucy Kathan Jenkins, and cousins. He left a last will and testament giving $2,000 each to the uncle and aunt and three other legacies of $1,000 each to family servants. Substantially the entire estate, aggregating about half a million dollars, was given to a second cousin, Dr. Norman Kathan.   The will was witnessed by Dr. Dudley Kathan, father of the residuary legatee, and by decedent's attorney, Levine.   Decedent became ill and entered the hospital on January twenty-first, his will was drawn on March thirteenth by the attorney who was one of the witnesses, and he died on April fifth.   The petitioners and appellants say that they were induced to sign waivers of citation in connection with the probate through statements made to them in the afternoon of April eighth, the day of the funeral, by Dr. Dudley Kathan and the attorney, Levine, which were to the effect that after the payment of taxes and notes held by a bank, and a subscription to the hospital, there would not be much of anything left of the estate, not enough for any one to bother about, and that relying upon those statements and not understanding the import of the waiver of citation, they were induced to sign.   At that time they did not know the cause of decedent's death or his mental or physical condition while in the hospital; also they did not know that they would have been the only distributees if there had been no will.   The will was probated on April tenth, and on April seventeenth Mrs. Jenkins consulted Mr. Maynard, an attorney, who investigated the situation and in connection with the application to open the probate proceeding presented an affidavit which contains the following: "That thereafter deponent made an investigation in the matter and after interviewing nurses, doctors and other persons familiar with the situation, learned that at least a portion of the time Roland V. Kathan was confined to the hospital, he was

in a dazed or semi-dazed condition; was given strong drugs and opiates to relieve the pain; that immediately after the making of the alleged will, and apparently during a lucid interval, he stated to attendants that ' they got me to make a will; ' that the net estate, instead of being so small that it was hardly worth bothering with, would probably net nearly a half million dollars." The affidavit also states in substance that Mr. Maynard wrote a letter to the attorney, Levine, asking for the privilege of examining the attesting witnesses before the surrogate. This was followed by a conference between the attorneys which is described by Attorney Maynard: " That on or about April 29th, said Attorney Levine stopped in deponent's office and stated in substance that there might be some possibility of adjusting the matter, and it was then agreed that deponent would interview his clients and submit a proposition on condition that if it was not settled, the delay occasioned by the negotiations would not be urged in defense of an application to reopen the matter." Apparently no settlement resulted from that interview. Quoting further from the affidavit: " Deponent is informed, and verily believes, that the chart kept at the Ellis Hospital shows the physical and mental condition of Roland V. Kathan at the time he made the will, and at other times while he was a patient at the hospital, and that the same will show that, at the time the will was made, his condition was such that he lacked testamentary capacity." On June fourteenth witnesses were sworn in connection with the application to open the probate, and the proceedings were adjourned to June twenty-first. The document printed in the record, captioned " decision," *inter alia* contains these statements: " On the morning of June 19, 1939, this Court telephoned Attorney Maynard and advised him that he had some reason to believe that the attorneys for the estate might recommend a compromise in some amount between twenty and thirty thousand dollars, and asked Attorney Maynard to take it up with his clients that day, and advise him if there was any possibility of disposing of the matter." The decision and opinion then recites various negotiations between the attorneys for the respective parties, and says concerning the last hearing and the decision: " The following morning, June 21, 1940, the adjourned day of the trial, before the opening of Court, Attorneys Maynard and Peters conferred with their clients in the corridor of the Court House. After a conference of about one-half hour, Attorney Maynard came to the office of the Court and advised him that his clients had decided to accept $25,000.00; that the matter had been settled for that amount, and that one of the conditions of the settlement imposed by the attorneys for the estate was that there

be a formal dismissal of the proceedings before the Court, and that the terms and conditions of the settlement be not discussed or disclosed by the contestants or their attorneys.

" At about 10:30 A. M., with all the parties and their respective attorneys present, the trial was resumed. Attorney Maynard, of counsel for the petitioners, announced that the petitioners rested. Attorney Staley, of counsel for the respondents, made a formal motion for a dismissal," which was granted by the court.

Upon the hearing the only witnesses sworn were the petitioners and the historian of the Ellis Hospital who produced the hospital chart of Roland V. Kathan. The chart was received in evidence " subject to the right of counsel for respondents to examine the physicians and nurses in open court." Appellants say that they asked for time to consider the proposed settlement and were told by Mr. Maynard or his associate, Mr. Peters, that the settlement had to be accepted then or never " because the Surrogate will not grant even a day's delay and would throw the case out of court or dismiss the petitions for recalling the waivers," and the attorneys urged them to accept the offer, saying, " you told us to go ahead and use our own judgment. We did that and effected this settlement and you've got to go through with it." Appellants' attorneys received as their fee one-half of the $25,000.

The proceeding to open the decree probating the will was not litigated to a final determination. The opinion of the surrogate shows that he did not consider the matter judicially but only approved the settlement worked out between the parties, to the accomplishment of which he had contributed. The decision being in conformity with the requirement of the attorney for the executors that there be a formal dismissal of the proceedings, the decree entered was really a part of the settlement and not the judicial act of the surrogate. Our problem is to determine whether appellants should be relieved of the terms of their settlement.

The transactions between appellants and their attorneys must be viewed in the light of the law governing the relation between attorney and client. The attorneys acted in a fiduciary capacity. The interest of appellants in the estate was the corpus of the trust which the attorneys were administering. The advice given should have been disinterested, and intended to further the clients' interests. The attorneys were required to have and exercise reasonable skill. The statements by Attorney Maynard earlier quoted indicate at least an arguable claim of undue influence or mental incapacity on behalf of decedent. The extreme expedition with which the settlement was put through — the surrogate telephoned on June nineteenth and the adjustment was consummated two days later —

and the substantial interest which the attorneys had on account of the amount of the contingent fee, tend to corroborate appellants' assertion of undue influence and duress in the making of the settlement. The statements by the appellants show equitable grounds for maintaining a proceeding to set aside the agreement of settlement. If their statement is true, there was misrepresentation of material facts (*Bloomquist* v. *Farson*, 222 N. Y. 375), and as the decision was based entirely upon the settlement, it would fall, should it be determined that the agreement of settlement was void.

This court should adopt the permissive procedure of section 309 of the Surrogate's Court Act and receive further testimony or documentary evidence through the appointment of a referee. In advance of that, restitution should be made to the extent of the $12,500 received by the appellants. If that amount is not accepted by the executor, it should be deposited in court. The adjustment as to the $12,500 which the attorneys received will be taken up at a later stage in this proceeding.

HEFFERNAN and SCHENCK, JJ., concur; BLISS and FOSTER, JJ., dissent with the following memorandum: This is an appeal from an order of the Surrogate's Court of the County of Schenectady, entered January 6, 1941, which denied an application of appellants to vacate an order of the same court dated June 21, 1939, which denied an application of appellants to withdraw their waivers of citation and consents to the probate of the will of Roland V. Kathan, deceased, and to vacate the decree of said court dated April 10, 1939, admitting said will to probate.

Whatever may be said as to whether the surrogate was acting judicially when he made the order of June 21, 1939, it cannot be denied that in making the order now appealed from he acted only after a full and fair consideration of all the facts. We have here two adults, one of them a woman worth several hundreds of thousands of dollars, and who were represented by able and reputable counsel, who now claim that they have been twice defrauded, misled and forced against their will into signing papers. In the first instance they consented to the probate of the will and in the second instance they settled their claims against the estate. Even if we assume that when they signed the waivers, the facts with relation to the estate were misrepresented to them, it must be admitted that when they signed the releases they did so with their eyes wide open and with full knowledge as to the size of the estate and the conditions under which the will was executed. In addition to all this, in consideration for the execution of the releases, they were receiving a very substantial sum in settlement. As to the contingent retainer

under which their attorneys were acting, it must be remembered that these appellants faced two litigations with the certainty in each instance appeals would be taken to the court of last resort and with very serious legal obstacles to be overcome.

The releases completely bar this proceeding and the appellants failed to show any reason why they should be now treated as scraps of paper and tossed aside. Appellants enjoyed the fruits of their settlement for well over a year before instituting this proceeding. There is no claim that they did not know exactly what they were doing when they accepted the settlement and executed the releases. Their only claim is that they were improperly advised and that duress was exercised by their counsel. These claims are obviously fictitious and have not been sustained.

The order appealed from should be affirmed, with costs.

The Appellate Division will exercise the power granted under section 309 of the Surrogate's Court Act, to decide the questions of fact here presented after receiving further testimony, and appoints Hon. Charles B. Sears, Official Referee, to take further evidence on all issues presented and to report his opinion thereon.